UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 12-CR-0026(1) (JRT/JSM) |
| vs. | **POSITION OF DEFENDANT IN RESPECT TO SENTENCING** |
| WAKINYAN WAKAN MCARTHUR, | |
| Defendant. | |

The Defendant, WAKINYAN WAKAN MCARTHUR, by and through his attorney, Frederick J. Goetz, and pursuant to U.S.S.G. §6A1.2, and Local Rule 83.10, respectfully submits his Position Regarding Sentencing Factors.

The following factual issues remain to be resolved at an evidentiary sentencing hearing:

1. What quantity of drugs is the defendant responsible for under U.S.S.G. §2D1.1 given the jury's findings that the defendant was responsible for less than 500 grams of cocaine and at least 28 grams or more but less than 280 grams of cocaine base? The Presentence Investigation report, hereafter "PSI," holds defendant responsible for the greatest amount of drugs possible based upon the jury's finding: 499 grams of cocaine and 279 grams of cocaine base. Defendant contends that he should be held responsible for the lowest amount of drugs within the range: 1gram of cocaine and 28 grams of cocaine base.

2. What is the underlying racketeering activity to be used in determining the 'pseudo-counts' to determine the applicable sentencing guidelines ranges under U.S.S.G. §2E1.1 for the offense of conviction in Counts 1 and 2? The PSI recommends that the proper offense is attempted first degree murder under §2A2.1(a)(1) as to the incidents of August 21, 2010 (pseudo-count 1), September 9, 2010 (pseudo-count 2), and November 20, 2010 (pseudo-count 3). Defendant contends that he is not responsible for any of these underlying crimes as his participation in them has not been proven beyond a reasonable doubt. Even if his participation is proven, defendant contends that the underlying racketeering activity is more analogous to minor assaults under §2A2.3.

3. Whether the defendant possessed a firearm in connection with his distribution or trafficking of cocaine and cocaine base other than the two firearms underlying Counts 10 and 11 so as to give rise to an offense level increase under §2D1.1(b)(1)? The PSI concludes the defendant possessed other firearms, see PSI paragraphs 278 and 339. Defendant disputes these facts and contends that he did not possess these other firearms.

4. Whether the defendant used or attempted to use a person less than eighteen years of age to commit a crime so as to give rise to an offense level increase under §3B1.4? The PSI asserts the defendant used a minor, P.S., to commit the drug offense, see PSI paragraph 344. Defendant objects and contends he did not use any minor to commit any crime.

2

In addition to the above issues which also involve questions of law, the following legal issues remain for determination at sentencing:

*Guidelines Issues*

1. Whether the defendant ever maintained a "stash house" so as to subject him to a 2-level enhancement under U.S.S.G. §2D1.1(b)(12)? Defendant contends he never maintained a stash house.

2. Whether an offense level increase is warranted under §2D1.1(b)(14) for committing the offense as part of a pattern of criminal conduct engaged in as a livelihood? (See PSI paragraph 342). Defendant contends that no such offense level increase is warranted.

3. Whether an increase in offense level is warranted under §3B1.1? The PSI contends a four-level increase is warranted for a role of an organizer or leader. Defendant contends that no increase is warranted for role in the offense as, though McArthur had the title of "Ogema" for the Native Mob on the streets, this role is properly viewed as a first among equals rather than an organizer or leader of criminal activity warranting an offense level increase under §3B1.1(a).

4. Whether the defendant ever obstructed justice warranting an enhancement under U.S.S.G. §3C1.1? Defendant maintains he did not obstruct justice as he never committed, suborned or attempted to suborn perjury either through possible witness Gordon Reese or through his own testimony.

*Other Sentencing Issues*

5.  Whether Count 11 is a "second or subsequent conviction" under §924(c)(1)(C) where the firearm underlying this count of conviction and the firearm underlying Count 10 were used during and in relation to a single crime of violence or drug trafficking crime, namely the racketeering conspiracy alleged Count 1? Defendant contends that Count 11 is not a second or subsequent conviction under §924(c)(1) and that therefore his conviction on Count 11 should be vacated as it is the same offense as Count 10.  In the alternative, the sentences for Counts 10 and 11 should be merged into a single five year mandatory consecutive term of imprisonment.

6.  Whether defendant is subject to a term of imprisonment of not less than 25 years under 18 U.S.C. §924(c)(1)(C) where there was no finding by a jury beyond a reasonable that Count 11 is a "second or subsequent conviction under" §924(c)? Defendant contends that because there was no such jury finding as to this fact which increases the mandatory minimum sentence from 5 years to 25 years, subjecting defendant to a second consecutive sentence of 25 years imprisonment would violate his right to due process under the Fifth Amendment and his right to a jury trial under the Sixth Amendment.  *Alleyne v. United States*, 1335 S.Ct. 2151 (2013).

7.  Whether the defendant may be held responsible for sentencing purposes for alleged attempted murders where he never admitted to the facts establishing the elements of attempted murder and there was no finding by a jury that the elements of attempted murder were proven beyond a reasonable doubt as to the incidents of

4

August 21, 2010 (pseudo-count 1), September 9, 2010 (pseudo-count 2), and

November 20, 2010 (pseudo-count 3)?  Defendant contends that using such

pseudo-offenses to determine defendant's sentence violates his Fifth Amendment

right to due process, his Sixth Amendment right to a jury trial, and the Sentencing

Guidelines' proof requirements for offenses underlying the RICO conspiracy,

Count.

8.  Whether a downward variance from the otherwise applicable advisory guidelines

range is appropriate in light of the factors of 18 U.S.C. §3553(a)?

Defendant believes that in light of all the above objections and arguments, a sentence

of 120 months imprisonment on Counts 1, 2, 7 and 8 with a single consecutive sentence

of 60 months imprisonment on Counts 10 and 11 is reasonable.

**SPECIFIC OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**

*Preliminary Objection*:

As a general objection, Defendant objects to the inclusion in his PSI within the

offense conduct portion of any description of any act involving any co-defendant other

than those paragraphs concerning actual crimes and related incidents that McArthur was

found by the jury to have participated in beyond a reasonable doubt. This objection is

based upon the Defendant's Fifth Amendment right to due process of law and Sixth

Amendment right to a jury trial.

Defendant also objects to the inclusion in the PSI of any facts that result in any

increase in his statutory maximum sentence, statutory minimum sentence, or guideline

imprisonment range beyond those facts specifically found by the jury to have been

5

proven beyond a reasonable doubt. See *Alleyne v. United States*, 133 S.Ct. 2151 (2013);

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d. 435 (2000).

Further, Defendant specifically objects to the following paragraphs in the PSI and

moves that they be stricken:

- Alden Fairbanks: ¶47, 48, 49 and 51;

- Dale Pindegayosh: ¶52 through 55;

- Justin Poitra: ¶57 through 59;

- Jason Poitra: ¶61 through 68;

- Damien Beaulieau: ¶70 through 85;

- Matthew Poitra: ¶87 through 91;

- Aaron Gilbert, Jr.: ¶93 through 96, 98 through 100;

- Derrick Williams: ¶101 through 110;

- Codey Stone: ¶112 through 117;

- Lance Hanks: ¶119 through 123;

- Cory Oquist: ¶125, 127, and 129 through 134;

- Kieron Kier: ¶136 through 139;

- Shelby Boswell: ¶141 through 146;

- Alex Jones: ¶148 through 162;

- Sam White: ¶163 through 169;

- Eric Bower: ¶171 through 174;

- Eduardo Lopez-Villarubia: ¶176 through 185;

- Sterling Heaton: ¶187 through 193;

- Dale Ballinger: ¶195 through 202;

- Irah Goodwin: ¶204 through 207;

- Jesus Ali: ¶208 through 222;

- Shaun Martinez: ¶224 through 248;

- Christopher Wuori: ¶252 and 257 through 258;

- Anthony Cree: ¶287 through 292 and 296; and

- William Morris: ¶297 through 304.

Mr. McArthur also has the following objections and proposed amendments to the PSI.

Page F-2. Defendant disputes that Count 11 carries a minimum, consecutive term of 25 years imprisonment and a maximum of life; a maximum 5-year term of supervised release: and maximum fine of $250,000.00; and $100.00 special assessment. Defendant contends that because the firearms in Count 10 and Count 11 were used, carried or possessed in furtherance of a single predicate offense, Count 1, to impose multiple § 924(c) convictions in relation to a single predicate offense would violate the double jeopardy clause of the Fifth Amendment. Defendant therefore moves that his conviction on Count 11 be vacated.  See *United States v. Diaz*, 592 F.3d 467 (3rd.Cir.2010).  In the alternative, because Counts 10 and 11 arise out of a single predicate offense, the sentences on these two §924 (c)(1) convictions should be merged into one five year consecutive sentence. *United States v. Freisinger*, 937 F.2d 383, 390-92 (8th.Cir.1991)

(under the doctrine of lenity, a sentence imposed on multiple § 924(c)(1) convictions based upon a single underlying offense cannot exceed five years).

¶31. Wakinyan McArthur objects to this paragraph in so far as it states "Wakinyan has led the Native Mob since 2007, while his brother Wambli; continues to lead the Native Mob in the Minnesota State prison system." While Wakinyan McArthur was a "Chief" or "Ogema," this does not equate with him being a leader in the sense of a hierarchical organizational structure. All members of the Native Mob had an equal voice in the group and were free to choose what they did or did not do. Also, the murder that Wambli McArthur was convicted of was not gang related. Finally, Defendant objects to the statement that he brought "new levels of discipline and organization" to the Native Mob as the group's practices as to discipline and organization were already in place. "Level" is a vague term and the phrase "new levels" should be stricken. McArthur would clarify this paragraph to state that he was released from prison in 2006, not 2007; that the first council meeting was not held until 2010; and that the purpose of the council meetings was to give members of the Native Mob from different factions a mechanism to resolve their disputes with other Native Mob members without killing each other.

¶32. Mr. McArthur objects to this paragraph in so far as it states that "the Native Mob maintained a distinct hierarchy of elected leadership." While there were positions within the Native Mob of chief, co-chief, war chief, treasurer, chief enforcer, and reps, the Native Mob as an entity is rooted in the concept of "circle" in Native American culture. As such, every member of the group or community-the circle-has an equal voice. The primary duties of the "Chief" or "Ogema" was facilitating discussion and

8

communication amongst members of the group and directing group members to resolve their disputes and differences within the circle structure rather than acting out individually and violently against other members of the group. Delegating and encouraging the commission of criminal acts was absolutely not one of the "primary duties" of the Chief, as the Chief or Ogema had little if any control over what acts or behaviors other members of the group engaged in, criminal or non-criminal.

¶36. On the streets, Native Mob members were not expected to use any means necessary to force respect from those who showed disrespect. Individual members dealt with whatever individual situations they encountered as they saw fit. In fact, one of the most violent members of the Native Mob, Damian Beaulieu, received no recognition, credibility or enhancements for his many acts of wanton violence.

¶37. Defendant McArthur objects to this paragraph in its entirety and requests that it be stricken from the PSI. Alternatively, he asks that it be amended to reflect that though Native Mob members engaged in criminal activity, they did so as individuals rather than members of the group. The Native Mob itself did not finance any activities. Individual members would give financial support to other individual members when they could but there was no common fund or treasury. Individual members who sold drugs, committed robberies, or other crimes did so for their own individual benefit and purposes.

¶38. Defendant McArthur objects to this paragraph in so far as it states that one of the purposes of meetings of the Native Mob was to encourage further violence by members. This is not correct. Defendant moves that this be stricken from the PSI.

¶39. Defendant would delete "contraband" from this paragraph. Just as with the government paying prisoners their earnings, the donor of any money had no control or knowledge of how the donee would use it. Money may have been sent in for a particular legitimate purpose, but never to purchase contraband.

¶41. Defendant McArthur objects to the second sentence of this paragraph and moves that it be stricken from the PSI. McArthur disputes the premise that members of the Native Mob had any "common purpose" other than to keep members of the group from attacking or killing each other and protecting each other. While individual members of the Native Mob certainly committed crimes, these were for the individual's purposes and benefits of the perpetrator and not for some broader collective common purpose of the Native Mob.

¶42. Defendant McArthur objects to this paragraph in so far as it states that "Native Mob operated and conducted their affairs through a series of laws and policies, some of which were codified in a series of bylaws." The evidence at trial established that any written bylaws or policies applied strictly to the Native Mob within the prisons. There was no evidence that any written bylaw or policy was ever recovered from any Native Mob member on the street or during the search of any premises, building, automobile, or person associated with the Native Mob on the street. Further, defendant would amend this paragraph to note that while a number of things were discussed at Native Mob council meetings, the primary reason that these meetings took place at all was to give Native Mob members from different factions in Minnesota a way to resolve their intra-group disputes without resorting to serious acts of violence. Further, Defendant

would amend this paragraph to clarify that there was no agreement at any Native Mob meeting to murder or attempt to murder anyone. Further, there was no agreement amongst Native Mob members at such council meetings to commit robberies, acts of drug-trafficking and other crimes and to conceal their criminal activities and to obstruct justice including threating witnesses. While individual members of the Native Mob committed crimes, they did so for their own individual benefit and reasons.

¶43. Defendant McArthur objects to this paragraph in its entirety and asks that it be stricken from the PSI. While individual members of the Native Mob committed crimes, they did so for their own individual reasons and benefit.

¶50. Though Defendant McArthur recognizes the jury's verdict of guilty as to Count 11, he maintains that he did not order this home invasion.

¶89. Defendant objects to this paragraph in so far as it states that he directed individuals to transport firearms from northern Minnesota to Minneapolis. Defendant disputes this assertion and would strike this language from the PSI.

¶97. See proposed amendment to ¶50.

¶126. Though Defendant McArthur recognizes the jury's verdict as to Count 10, he maintains that he did not order the shooting of August 24, 2010, in Bemidji.

¶128. See Defendant's proposed amendment to ¶50.

¶134. Defendant understands that Oquist admitted that he participated in an attempted murder but disputes that this is a proper characterization of the incident. The underlying offense is more analogous to a minor assault. See U.S.S.G. § 2A2.3. There certainly was no jury finding that this incident constituted an attempted murder. Further,

11

"attempted murder" is vague and non-specific as there are different degrees of murder which require proof varying elements, none of which have been submitted to a jury nor proven beyond a reasonable doubt. Defendant therefore objects to the characterization of this incident as an "attempted murder" as violating his right to due process under the Fifth Amendment and his right to a jury trial under the Sixth Amendment.

¶155. Defendant maintains he was not present when this happened and that Jones never identified him as being present.

¶192. In the event this paragraph is not stricken as requested above, Defendant also moves to strike this paragraph as there was no reliable evidence at trial that he gave one ounce of methamphetamine and a 9mm handgun to Sterling Heaton in the summer of 2010 as claimed by CI # 1. In fact, the jury found that the defendant never distributed any methamphetamine. Because these facts were never proven beyond a reasonable doubt, defendant objects to the inclusion of this entire paragraph in his PSI as violating his right to due process under the Fifth Amendment and his right to a jury trial under the Sixth Amendment.

¶229. If this paragraph is not stricken from the PSI as requested above, Defendant McArthur moves that it be stricken from the PSI on the additional grounds that there was no reliable evidence introduced at trial showing that the murder of Jeremee Kraskey had anything to do with the defendant or the Native Mob. Because these facts were never proven beyond a reasonable doubt, defendant objects to the inclusion of this entire paragraph in his PSI as violating his right to due process under the Fifth Amendment and his right to a jury trial under the Sixth Amendment.

¶231. If this paragraph is not stricken from the PSI as requested above, Defendant McArthur moves that it be stricken from the PSI on the additional grounds that there was no reliable evidence introduced at trial showing that the murder of Jeremee Kraskey had anything to do with the defendant or the Native Mob.  Because these facts were never proven beyond a reasonable doubt, defendant objects to the inclusion of this entire paragraph in his PSI as violating his right to due process under the Fifth Amendment and his right to a jury trial under the Sixth Amendment.

¶248. If this paragraph is not stricken from the PSI as requested above, Defendant McArthur moves that it be stricken from the PSI on the additional grounds that there was no reliable evidence introduced at trial showing that the murder of Jeremee Kraskey had anything to do with the defendant or the Native Mob.  Because these facts were never proven beyond a reasonable doubt, defendant objects to the inclusion of this entire paragraph in his PSI as violating his right to due process under the Fifth Amendment and his right to a jury trial under the Sixth Amendment.

¶254. Defendant would amend this paragraph in the same manner as he would amend ¶50, supra.

¶263. Defendant objects to this paragraph in so far as it states that "during the conversation, McArthur ordered the assault of a prison inmate." Defendant McArthur contends that the telephone conversation speaks for itself. He never ordered the unindicted Native Mob member to do anything. Rather, the conversation shows that while he did not stop the unindicted Native Mob member from doing whatever it was he was going to do, he never ordered any assault.

13

¶266. Defendant disputes that he told Boswell to "kill Clayton G" and moves to strike this reference from this paragraph.

¶267. Defendant objects to this paragraph in so far as it characterizes his statements as "McArthur encouraged other members to use his home to prepare drugs for distribution." McArthur's statements allowed but did not encourage people to bring their drugs to the house on one single occasion.

¶268. Defendant objects to this paragraph in so far as it states that he "encouraged fellow Native Mob members to eliminate a rival drug dealer (L.D. a/k/a "Sonic") in the Cass Lake and Bemidji areas." Mr. McArthur denies that he did this or that he ever targeted Sonic for murder or assault. Mr. McArthur was incarcerated in December 2009. Because these facts were never proven beyond a reasonable doubt, defendant objects to the inclusion of this entire paragraph in his PSI as violating his right to due process under the Fifth Amendment and his right to a jury trial under the Sixth Amendment.

¶269. While Defendant recognizes the jury's verdict as to Count 10, he maintains that he did not order any shootings on August 24, 2010 or August 21, 2010.  As to the shooting of August 21, 2010 in particular, defendant moves to strike all references to this "Kay Avenue shooting" from the PSI on the grounds that his participation or involvement in this shooting was never submitted to a jury nor proven beyond a reasonable doubt. Defendant therefore objects to the inclusion of any references to the "Kay Avenue shooting" of August 21, 2010 in his PSI as violating his right to due process under the Fifth Amendment and his right to a jury trial under the Sixth Amendment.

14

¶271. Defendant moves to amend this paragraph to state that he told other Native Mob members not to <u>retaliate</u> for the murder; he did not say "they were not to <u>investigate</u>."

¶272. While McArthur recognizes the jury's verdict as to Count 11, he denies that he ever ordered the home invasion of the J.W. residence on the Leech Lake reservation on March 28, 2011.

¶274. Defendant would strike this paragraph from the PSI. He did not use minors to commit crimes.

¶276. This shooting was committed by Damien Beaulieu, not P.S. Defendant moves that the Court order that this paragraph be amended accordingly.  Further, the evidence at trial showed that this shooting resulted from a personal dispute between Beaulieu and K.F. over a shared love interest and had nothing to do with the defendant or the Native Mob.  See testimony of Saluki Fardan at pp. 15-17.  Because this incident has nothing to do with this case, any reference to it should be ordered stricken from Mr. McArthur's PSI.

¶277. Defendant moves that this entire paragraph be stricken from the PSI.  He contends that the incident set forth in this paragraph never happened.  Because these facts were never submitted to a jury nor proven beyond a reasonable doubt, defendant objects to the inclusion of this entire paragraph in his PSI as violating his right to due process under the Fifth Amendment and his right to a jury trial under the Sixth Amendment.

¶278. Defendant McArthur disputes that the evidence shows that he had any connection with any of the firearms listed in this paragraph other than the unidentified

9mm Makarov or .380 caliber pistol connected with a shooting of August 24, 2010. Defendant also objects to the characterization of that shooting as an "attempted murder" as it is more properly characterized as a criminal damage to property. Defendant moves to strike references to all other firearms in this paragraph from the PSI.

¶279. Defendant objects to this paragraph in so far as it states that "McArthur instructed Reese to lie in his testimony." While McArthur acknowledges sending the letter, the things he asked Gordon Reese to confirm were the truth. Specifically, Mr. McArthur was close with Jeremee Kraskey. Further, it was verily believed by Mr. McArthur and many others that Amos LaDuke was behind the creation and dissemination of a false opinion purportedly by the Minnesota Court of Appeals that was meant to demean Mr. McArthur within the prison system thereby encouraging others to assault him because, among other things, he was falsely portrayed as a pedophile. Copies of the actual decision and the false decision believed to be disseminated by Amos LaDuke are attached hereto. See Exhibits 1 and 2.

¶280. Defendant objects to this paragraph in so far as it states that "McArthur testified, falsely, that the Native Mob did not have a set of bylaws that applied to members on the street." This testimony was accurate. The evidence at trial showed that the Native Mob did not have any written bylaws on the street. Investigator Jerry Wilhelmy acknowledged that all of the written copies of "bylaws" and rules of the Native Mob were obtained in searches of prison cells. Testimony of Jerome Wilhelmy p.528. Upon information and belief, no evidence was introduced at trial showing that even a single set of written rules or by-laws were ever recovered from any alleged Native Mob

member during any of the numerous searches of houses, vehicles and persons outside of prison. No evidence was presented that any such written bylaw was ever recovered from a Native Mob member on the street. If Mr. McArthur said anything at a Native Mob meeting that was to the contrary, this was inaccurate. This does not make his testimony false. Defendant moves that this entire paragraph be stricken as not factually supported by the evidence adduced at trial.

¶285. While Defendant McArthur acknowledges that he has been a long time member of the Native Mob, he disputes that he was "one of the founding members." He also disputes that he is responsible for controlled substances equating to at least 1,000 kilograms but less than 3,000 kilograms of marijuana equivalent. Based upon the jury's findings at trial, Defendant contends that the amount of controlled substances he is responsible for equates to at least 100 kilograms but less than 400 kilograms of marijuana equivalent. Defendant also objects to this paragraph in so far as it misstates the extent of the jury's findings as to Counts 10 and 11. While the jury did find that the defendant violated 18 U.S.C. §924(c) as to the incidents of August 24, 2010 and March 28, 2011, there was no finding that Mr. McArthur ordered the shooting of August 24, 2010 or the home invasion of March 28, 2011. Any such references in this paragraph that the jury made such "findings" should be ordered stricken. Further, defendant objects to this paragraph in so far as it states that the defendant was "responsible for delegating and encouraging the commission of criminal acts by gang members" or "managing personnel." The evidence at trial established that Native Mob members committed crimes on their own for their own reasons. Finally, defendant objects to this paragraph in

17

so far as it states that McArthur "held an organizing or leadership position in this conspiracy that involved five or more participants and was otherwise exhaustive." Defendant rejects and objects to the characterization of the Native Mob as an entity that had a hierarchical structure. While the defendant was the "Ogema" of the group on the streets, this position is more properly viewed as the first among equals rather than as someone with any organizing or leadership role in the hierarchical sense.

¶292. This paragraph should be stricken from the PSI as the jury acquitted McArthur of all Counts involving the shooting of A.L. on March 4, 2010. McArthur had nothing to do with the shooting of A.L.

¶294. Defendant disputes that he ever packed cocaine base with Anthony Cree. This claim is unsupported by the evidence and should therefore be stricken from the PSI.

¶309. Defendant objects to any enhancement for obstruction or related adjustment pursuant to U.S.S.G. § 3C1.1. Defendant contends that he never willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction. Defendant also restates his objections and proposed amendments to ¶279 and incorporates same herein by reference.

¶314. Defendant objects to this paragraph in so far as it uses as underlying racketeering activity offenses that were not found by a jury beyond a reasonable doubt to have been committed. The only crimes the jury found McArthur committed that would fall within underlying racketeering activities would be Distribution and Possession of Controlled Substances and the Use and Carrying of Firearms During and Relation to a

18

Crime of Violence. Defendant specifically objects to any use of the crime of attempted murder as underlying racketeering activity to determine Mr. McArthur's base offense level in Count 1. Mr. McArthur contends that it violates his right to Due Process of Law under the Fifth Amendment to the United States Constitution, his right to a Jury Trial under the Sixth Amendment to the United States Constitution and U.S.S.G. § 11B1.2 (d) to use any of the "three" attempted murders to determine his base offense level where there was no finding by a jury or fact finder beyond a reasonable doubt that he committed these crimes. Moreover, because the events are more properly viewed as minor assaults, it is this offense that should constitute these three pseudo counts and not the crime of attempted murder.

### Count Group 1-Racketeering Activity-Pseudo Count- Attempted Murder on August 21, 2010 (Count 1):

Defendant objects to ¶¶317 to 323 in their entirety and asks that they be stricken from the PSI. Including the crime of attempted murder as a pseudo count to determine the base offense level in Count 1 violates the Defendant's right to Due Process of Law as guaranteed by the Fifth Amendment to the United States Constitution and his right to a Jury Trial as guaranteed by the Sixth Amendment to the United States Constitution and is contrary to the requirements of § 1B1.2(d) where he was never found beyond a reasonable doubt to have committed the offense of attempted murder, either as a principal, aider and abettor, or co-conspirator on August 21, 2010.

¶317. Defendant further objects to the use of the crime of attempted murder to determine the base offense level. Defendant submits that the conduct at issue is more

properly deemed a minor assault. Defendant would therefore amend this paragraph to provide "the underlying racketeering activity is Minor Assault, and the guideline for this offense is found in § 2A2.3 of the Guidelines."

¶318. Defendant objects to this paragraph in its entirety. He did not encourage Native Mob members to murder a rival drug dealer (L.D. a/k/a "Sonic") on August 21, 2010. He did not direct anyone to use any firearm to shoot at, or attempt to kill, "Sonic" in Bemidji. Defendant also objects as this incident is more properly viewed as a minor assault with a base level of 7. § 2A2.3(a)(1). Because this offense level is less than the base offense level that would otherwise apply to Count 1 under § 2E1.1(a)(1), the base offense level is 19. § 2E1.1(a).

¶321. Defendant objects to this paragraph in its entirety. He contends that no adjustment for role in the offense is warranted. For the reasons stated in his objections to ¶36 above, Defendant contends that though he was the "Ogema" of the Native Mob, he was not a "leader" in the sense that would warrant a 4 level increase in offense level under § 3B1.1(a) of the Guidelines.

¶322. Defendant objects to this paragraph in its entirety. Defendant contends that he never obstructed justice. For the reasons set forth in his objections to ¶279 above, Defendant only asked Gordon Reese to testify truthfully. Therefore, no enhancement is warranted under § 3C1.1 and this Guideline's section does not apply.

¶323. If this pseudo count is included for guideline purposes, Defendant contends that the Adjusted Offense Level should be 19.

20

**<u>Count Group 2-Rackateering Activity-Pseudo Count-Attempted Murder on September 9, 2010 (Count 1):</u>**

Defendant objects to ¶¶324 to 330 in their entirety and asks that they be stricken from the PSI. Including the crime of attempted murder as a pseudo count to determine the base offense level in Count 1 violates the Defendant's right to Due Process of Law as guaranteed by the Fifth Amendment to the United States Constitution his right to a Jury Trial as guaranteed by the Sixth Amendment to the United States Constitution, and § 1B1.2 (d)  where he was never found beyond a reasonable doubt to have committed the offense of attempted murder, either as a principal, aider and abettor or co-conspirator on September 9, 2010.

¶324. Defendant further objects to the use of the crime of attempted murder to determine the base offense level. Defendant submits that the conduct at issue is more properly deemed a minor assault. Defendant would therefore amend this paragraph to provide "the underlying racketeering activity is Minor Assault, and the guideline for this offense is found in § 2A2.3 of the Guidelines."

¶325. Defendant objects to this paragraph in its entirety. Defendant disputes that he had anything to do with the shooting of K.F. on September 9, 2010. Rather than being an incident related to the Native Mob, the evidence at trial established that this was a personal dispute between K.F. and a member of the Native Mob, D.B., over a female. Moreover, if the incident is included as a pseudo count, it is more appropriately viewed as a minor assault under § 2A2.1 of the Guidelines. Because the base offense level is less than that for Count 1 under § 2E1.1(a)(1), the base offense level is 19.

¶328. Defendant objects to this paragraph in its entirety. He contends that no adjustment for role in the offense is warranted. For the reasons stated in his objections to ¶36 above, Defendant contends that though he was the "Ogema" of the Native Mob, he was not a "leader" in the sense that would warrant a 4 level increase in offense level under § 3B1.1(a) of the Guidelines.

¶329. Defendant objects to this paragraph in its entirety. Defendant contends that he never obstructed justice. For the reasons set forth in his objections to ¶279 above, Defendant only asked Gordon Reese to testify truthfully. Therefore, no enhancement is warranted under § 3C1.1 and this Guideline's section does not apply.

¶330. If this pseudo count is included for guideline purposes, Defendant contends that the Adjusted Offense Level should be 19.

**Count Group 3- Racketeering Activity- Pseudo Count- Attempted Murder on November 20, 2010 (Count 1):**

Defendant objects to ¶¶331 to 337 in their entirety and asks that they be stricken from the PSI. Including the crime of attempted murder as a pseudo count to determine the base offense level in Count 1 violates the Defendant's right to Due Process of Law as guaranteed by the Fifth Amendment to the United States Constitution, his right to a Jury Trial as guaranteed by the Sixth Amendment to the United States Constitution, and § 1B1.2 (d) where he was never found beyond a reasonable doubt to have committed the offense of attempted murder, either as a principal, aider and abettor or co-conspirator on November 20, 2010.

¶331. Defendant further objects to the use of the crime of attempted murder to determine the base offense level. Defendant submits that the conduct at issue is more properly deemed a minor assault. Defendant would therefore amend this paragraph to provide "the underlying racketeering activity is Minor Assault, and the guideline for this offense is found in § 2A2.3 of the Guidelines."

¶332. Defendant objects to this paragraph in its entirety. He contends he had nothing to do with the shooting of R.B. on November 20, 2010. It should be noted that testimony at trial established that R.B. was not a member of a rival gang but of a charitable organization, Native Growth and Development. If this incident is included as a pseudo count, it is more properly viewed as a minor assault. As stated in the objections to ¶318, the base offense level would be 19 under § 2E1.1.

¶335. Defendant objects to this paragraph in its entirety. He contends that no adjustment for role in the offense is warranted. For the reasons stated in his objections to ¶36 above, Defendant contends that though he was the "Ogema" of the Native Mob, he was not a "leader" in the sense that would warrant a 4 level increase in offense level under § 3B1.1(a) of the Guidelines.

¶336. Defendant objects to this paragraph in its entirety. Defendant contends that he never obstructed justice. For the reasons set forth in his objections to ¶279 above, Defendant only asked Gordon Reese to testify truthfully. Therefore, no enhancement is warranted under § 3C1.1 and this Guideline's section does not apply.

¶337. If this pseudo count is included for guideline purposes, Defendant contends that the Adjusted Offense Level should be 19.

**Count Group 4-Drugs, Conspiracy Fire Arm Offense and Count 1 Pseudo Counts for same Acts:**

¶338. Defendant objects to and disputes the drug quantity determination set forth in this paragraph. While this paragraph of the PSI accurately reflects the jury's determination as to the amount of drugs that the defendant was responsible for in general, the specific quantities of 499 grams of cocaine and 279 grams of cocaine base were neither found by the jury nor supported by the evidence. It is evident that the PSI has used the greatest possible drug quantities within the range of drug quantities found by the jury. Given the jury's finding of guilt as to Count 8 and the jury's findings of drug quantities as to Count 7, Defendant would amend this paragraph to provide that he is responsible for 1 gram of cocaine which converts to 200 grams of marijuana and 28 grams of cocaine base which converts to 99.988 kilograms of marijuana. Therefore, pursuant to § D1.1(c)(7), Defendant is responsible for the equivalent of between 100 kilograms but less than 400 kilograms of marijuana which results in a base level of 26.

¶339. Defendant objects to this paragraph in its entirety and asks that it be stricken from the PSI. Defendant disputes that the evidence at trial established that he possessed any firearms in connection with the offenses other than the firearms associated with Counts 10 and 11 which may not provide the basis for any enhancement under § 2K2.4, Application Note 4.

¶340. Defendant objects to the inclusion in this paragraph to any reference that he is alleged to have directed another Native Mob member to assault a prison inmate. As set forth in defendant's objections to paragraph 263, supra, this did not happen. Defendant

24

moves that such references be stricken from this paragraph as well but otherwise does not object to the offense level increase under §2D1.1(b)(2).

¶341. Defendant objects to this paragraph in its entirety and asks that it be stricken from the PSI. The evidence at trial did not establish that he maintained a premises for the purposes of manufacturing or distributing a controlled substance so as to warrant a 2-level increase in offense level under § 2D1.1(b)(12) of the Guidelines.

¶342. Defendant objects to this paragraph in its entirety and moves that it be stricken from the PSI. While Defendant was the Ogema of the Native Mob and was a member of the group for many years, it was not his "life." Moreover, and more importantly, Mr. McArthur's activities with the Native Mob were not his "livelihood" within the definition of § 4B1.3. Therefore, no enhancement is warranted under § 2D1.1(b)(14).

¶344. Defendant objects to this paragraph in its entirety and asks that it be stricken from the PSI. Defendant contends that no enhancement is warranted under § 3B1.4. Defendant specifically disputes that he used P.S. to commit the offense or assist in avoiding detection of, or apprehension for, the offense.

¶345. Defendant objects to this paragraph in its entirety. He contends that no adjustment for role in the offense is warranted. For the reasons stated in his objections to ¶36 above, Defendant contends that though he was the "Ogema" of the Native Mob, he was not a "leader" in the sense that would warrant a 4 level increase in offense level under § 3B1.1(a) of the Guidelines.

¶346. Defendant objects to this paragraph in its entirety. Defendant contends that he never obstructed justice. For the reasons set forth in his objections to ¶279 above, Defendant only asked Gordon Reese to testify truthfully and defendant did not commit perjury at trial. Therefore, no enhancement is warranted under § 3C1.1 and this Guideline's section does not apply.

¶347. In light of the above objections, Defendant contends that the Adjusted Offense Level should be 28.

**Multiple Count Adjustment:**

¶348. For the reasons stated in his objections to paragraphs 317 to 323 of the PSI, Defendant moves to strike this paragraph from the PSI.  In the alternative, Defendant would amend this paragraph to provide that the offense is minor assault resulting in an adjusted offense level of 19.

¶349. For the reasons stated in his objections to paragraphs 324 to 330 of the PSI, Defendant moves to strike this paragraph from the PSI.  In the alternative, Defendant would amend this paragraph to provide that the offense is minor assault resulting in an adjusted offense level of 19.

¶350. For the reasons stated in his objections to paragraphs 331 to 337 of the PSI, Defendant moves to strike this paragraph from the PSI.  In the alternative, Defendant would amend this paragraph to provide that the offense is minor assault resulting in an adjusted offense level of 19.

¶351. Defendant would amend this paragraph to provide for an offense level of 28.

¶353. Defendant would amend this paragraph to provide for an offense level of 28.

26

¶355. Defendant would amend this paragraph to provide for a Combined Adjusted Offense Level of 29. However, as noted above, Defendant objects to any multiple count adjustment as the only offenses that the jury found he committed are grouped. The total offense level should therefore be 28.

¶357. Defendant objects to the Total Offense Level calculations in the PSI. First, he contends that the total offense level should be 28. Second, and in the alternative, if there is any grouping of offenses, the total offense level would be 29.

¶358. Defendant objects to this paragraph in so far as it states that he is subject to a consecutive term of imprisonment of not less than 25 years. As stated in his objections to paragraph F2, Defendant disputes that Count 11 carries a minimum, consecutive term of 25 years imprisonment and a maximum of life; a maximum 5-year term of supervised release: and maximum fine of $250,000.00; and $100.00 special assessment. Defendant contends that because the firearms in Count 10 and Count 11 were used, carried or possessed in furtherance of a single predicate offense, Count 1, to impose multiple § 924(c) convictions in relation to a single predicate offense would violate the double jeopardy clause of the Fifth Amendment. *United States v. Diaz*, 592 F.3d 467 (3rd.Cir.2010). Defendant therefore moves that his conviction on Count 11 be vacated. In the alternative, because Counts 10 and 11 arise out of single predicate offense, the sentences on these two § 924(c) convictions should be merged into one 5-year sentence. *United States v. Freisinger*, 937 F.2d 383, 390-92 (8th Cir. 1991).

¶370. Defendant would strike this paragraph from the PSI as it is not him.

¶388. Defendant objects to this paragraph as, though he is a long time member of the Native Mob, he was not a founding member.

¶415. For the reasons stated in defendant's objections to paragraph 358 supra, defendant's conviction on Count 11should be vacated. In the alternative, the sentences on Counts 10 and 11 should run concurrently as they arise out of a single predicate offense. Defendant should therefore be subject to a single mandatory minimum consecutive sentence of five years.

¶416. Defendant would amend this paragraph to reflect a total offense level of 29 which, with the criminal history category of III, results in a guideline range of 108 to 135 months imprisonment. If the total offense level is 28, the resulting guideline range for criminal history category III is 97 to 121 months imprisonment. Further, as stated above in defendant's objections to paragraph 358, a single 5-year consecutive sentence is permissible under 18 U.S.C. § 924(c)(1)(A) of five years as to both Counts 10 and 11. Defendant's conviction on Count 11 must be vacated or, in the alternative, the sentences on Counts 10 and 11 merged into a single consecutive five year sentence. Further, under U.S.S.G. §5G1.1(a) and(c)(1), the guideline range of imprisonment is capped at 40 years in light of the jury's findings as to drug quantity and 21 U.S.C. §841(b)(1)(B)(iii).

## ARGUMENT

I.    *The Two Step Sentencing Analysis*

In *Gall v. United States,* 128 S.Ct. 586 (2007), the United States Supreme Court clarified the two step process to be followed in federal sentencing.  The first step is to determine the proper guidelines' range for the defendant's sentence.  *Gall,* 128 S.Ct. at

596.   In the second step, the court should consider the factors in 18 U.S.C. § 3553(a) and

determine whether a departure or a variance is appropriate.  *Gall,* 128 S.Ct. at 596-97;

*United States v. Roberson,* 517 F. 3d 990, 993 (8th.Cir.2008).

The correct calculation of a sentence under the guidelines is a starting point.  *Gall,*

128 S.Ct. at 596.   The overarching consideration under the Sentencing Reform Act is

that the sentencing court "'impose a sentence sufficient, but not greater than necessary,'

to accomplish the goals of sentencing."  *Kimbrough v. United States,* 128 S. Ct. 558, 570

(2007).   As the United States Supreme Court recognized, "(i)t has been uniform and

constant in the federal judicial tradition for the sentencing judge to consider every

convicted person as an individual and every case as a unique study in the human failings

that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

*Koon v. United States,*  518 U.S. 81, 113, 116 S.Ct. 2035, 2053 (1996).  Indeed, the

district courts have an "institutional advantage" in making sentencing decisions as "they

see so many more Guidelines cases than appellate courts do."  *Koon*, 518 U.S. at 98, 116

S. Ct. at 2047

The government bears the burden of proving all sentencing enhancements by a

preponderance of the evidence.  *United States v. Flores,* 362 F.3d 1030, 1037 (8th Cir.

2004).  Defendant believes that an evidentiary hearing is necessary in order for the

government to meet its burden of proof as to many of the challenged enhancements.

Under Local Rule 83.10(f), "the party bearing the burden of proof must file a separate

motion requesting an evidentiary hearing contemporaneous with submission of the

Position Regarding Sentencing." Defendant will leave it to the government to file the appropriate motion.

II.    *The Guidelines Calculation.*

A.    <u>Drug Quantity: Between 100 to 400 kg of marihuana resulting in a base offense level of 26.</u>

The base offense level for the pseudo Count Four in Count 1 and the offense in Count 7, conspiracy to distribute and possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841 (a) (1) and (b) (1) (B), is determined by reference to the Drug Quantity Table. U.S.S.G. § 2D1.1 (c). Here, the jury made specific findings that Mr. McArthur was responsible for the distribution of less than 500 grams of cocaine and 28 grams or more but less than 280 grams of cocaine base. Mr. McArthur cannot be held responsible for any drug amounts greater than those found by a jury beyond a reasonable doubt as to do so would violate the Sixth Amendment of the United States Constitution and run contrary to the command of *Alleyne v. United States*, 570 U.S. ___ 113 S.Ct. 2151, 2155 (2013); see also *United States v. O'Neil*, Case No. 12-2237 (8th.Cir.January 3, 2014).

While the jury's findings cap the amount of drugs that can be used to determine Mr. McArthur's base offense level under § 2D1.1 (a)(5), further findings by the Court are required to determine the amount of drugs that McArthur should be held responsible for and the corresponding base offense level within the amounts found by the jury. Without any specific or supporting underlying facts, the PSI concludes that McArthur should be

30

held responsible for the greatest amount of drugs that could still be consistent with the jury's findings: 499 grams of cocaine and 279 grams of cocaine base. Applying the Drug Equivalency Tables of § 2D1.1 Application Note 8 (D), the PSI concludes that Mr. McArthur is responsible for 1,096 kg of marijuana which, pursuant to § 2D1.1 (c)(4), results in a base offense level of 32 as the amount of drugs is between 1,000 and 3,000 kg of marijuana.

Equally plausible and consistent with the jury's findings would be holding McArthur responsible for at least 100 kg but less than 400 kg of marijuana resulting in a base offense level of 26. U.S.S.G. § 2D1.1 (c) (7). This range is arrived at by using the amounts at the low end of the jury's findings, specifically holding Mr. McArthur responsible for 1 gram of cocaine, the equivalent of 200 grams of marijuana, and 28 grams of cocaine base, the equivalent of 99.988 kilograms of marijuana. Combined, McArthur is responsible for 100.18 kilograms of marijuana. U.S.S.G. § 2D1.1. Commentary, Application Note 8 (B) and (D). Based upon the evidence adduced at trial, the Court should order that ¶ 338 be amended to reflect that McArthur is responsible for 1 gram of cocaine and 28 grams of cocaine base with the resulting drug equivalency calculations and base offense level determinations as set forth above.

B. Firearms Enhancement.

The PSI suggests at paragraph 339 that defendant receive a two level increase for possession of firearms under §2D1.1(b)(1).

The rationale underlying this enhancement is explained in Application Note 3 to §2D1.1. The Note provides as follows:

31

The enhancement for weapons possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

U.S.S.G. §2D1.1, Comment, Application Note 3.

The Government must prove two things in order for the §2D1.1(b)(1) enhancement to apply: (1) the defendant possessed the weapon and (2) it was not clearly improbable that the weapon was connected to the drug offense. The Eighth Circuit has long held that a firearm must be connected with criminal activity before its possession can be used to enhance a defendant's sentence. *United States v. Anderson,* 618 F.3d 873, 880 (8th.Cir.2010.) The Government can satisfy its burden by establishing that "a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *United States v. Atkins,* 250 F.3d 1203, 1214 (8th.Cir.2001). "Evidence that the weapon was in the same location as drugs or drug paraphernalia usually suffices." *United States v. Fladten,* 230 F.3d 1083, 1086 (8th.Cir.2000).

Defendant objects to this two-level offense level increase and puts the Government to its burden to prove that he possessed the firearms set forth in PSI paragraphs 278 and 338.

C. Use of a Minor

Defendant objects to the recommendation in the PSI that he receive a two level offense level increase for using a minor, P.S., to commit the drug offense. See PSI ¶¶ 276 and 344. Under U.S.S.G. §3B1.4, this enhancement applies only "(i)f the defendant

32

used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense, increase by 2 levels." U.S.S.G. § 3B1.4. Application Note 1 to this section provides: " '(u)sed or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." U.S.S.G. § 3B1.4, Commentary, Application Note 1. For this enhancement to apply, "the defendant must affirmatively involve or incorporate the minor into the commission of the offense[.]" *United States v. Mentzos,* 462 F.3d 830, 841 (8th.Cir.2006) (citing *United States. v. Paine,* 407 F.3d 958, 965 (8th.Cir.2005)). " 'Used or attempted to use' does not [...] require active involvement on behalf of the minor." *Paine,* 407 F.3d at 965; *see United States v. Castro–Hernandez,* 258 F.3d 1057, 1060 (9th.Cir.2001) ("It is sufficient that the defendant took affirmative steps to involve the minor in a manner that furthered or was intended to further the commission of the offense."). " 'The unambiguous legislative design of [§ ] 3B1.4 is to protect minors as a class from being "solicited, procured, recruited, counseled, encouraged, trained, directed, commanded, intimidated, or otherwise used" to commit crime.' " *Paine,* 407 F.3d at 965 (quoting *United States v. McClain,* 252 F.3d 1279, 1286 (11th.Cir.2001)).

The evidence at trial did not establish that McArthur directed, commanded, encouraged, intimidated, counselled, trained, procured, recruited or solicited P.S. to do anything. Whether or not P.S. was a member of the Native Mob or attended any council meetings, he did this freely and voluntarily without any direction, encouragement or other actions by McArthur that would subject this defendant to an enhancement under §3B1.4.

D. <u>No enhancement is warranted for maintaining a stash house.</u>

§2D1.1(b)(12) of the Guidelines provides for a two-level offense level increase "if the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." Note 17 of the Commentary to §2D1.1 more fully explains this enhancement stating in pertinent part as follows:

> Subsection (b)(12) applies to a defendant who knowingly maintains a premises…for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purposes of distribution.
>
> Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.
>
> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

U.S.S.G. §2D1.1, Commentary, Application Note 17 (2012).

No evidence was introduced at trial showing that one of the primary or principal reasons for McArthur's maintaining a home in Cass Lake was to manufacture of distribute controlled substances. While McArthur on a single occasion at a council meeting did tell other Native Mob members that they could stay at his house if they came to the next council meeting, in Cass Lake, that they could "chop their shit up," at best this is a one-off passing comment. Telling people they can bring their drugs with them on one occasion falls well short of establishing that the premises was maintained for the

manufacture or possession of drugs. It does not even come close. The government has not and cannot meet its burden of showing that any offense level increase is warranted under §2D1.1(b)(12). Paragraphs 267 and 341 should be ordered stricken from the PSI and no offense level increase given under §2D1.1(b)(12).

E. McArthur did not engage in a pattern of criminal conduct as a livelihood.

Defendant objects to the conclusion in ¶ 342 of the PSI that he is subject to a two level offense level increase under § 2D1.1 (b)(14)(E) for committing the offense as part of a pattern of criminal conduct as a livelihood. The Commentary to § 2D1.1 at Application Note 19 explains application of subsection (b)(14) in greater detail. It provides that for purposes of this subsection, the terms "pattern of criminal conduct" and "engaged in as a livelihood" have the meanings given in § 4D1.3.

Even if one accepts for the sake of argument that Mr. McArthur engaged in a pattern of criminal conduct, the evidence did not show that such conduct was "engaged in as a livelihood." Application Note 2 to § 4B1.3 defines this term as meaning that "(A) the defendant derived income from the pattern of criminal conduct that in any 12-month period exceeded 2,000 times the then existing hourly minimum wage under federal law; and (B) the totality of circumstances show that such criminal conduct was the defendant's primary occupation in that 12-month period…" U.S.S.G. § 4B1.3, Application Note 2.

Even if a defendant has engaged in a pattern of criminal conduct and derives income from that conduct, the enhancement does not apply where the defendant in the end makes little money doing so. "The Sentencing Commission did not intend a sentence to be enhanced under this section when a defendant gains a high percentage of his income

from criminal conduct, yet his total income remains below minimum wage." *United States v. Nolder*, 887 F.2d 140, 142 (8th.Cir.1989).

The federal minimum wage during the time period at issue in this case was $7.25 an hour. 29 U.S.C. § 206 (a)(c). 2,000 times this amount is $14,500. The government did not establish and cannot establish that Mr. McArthur made even close to this amount, certainly not more than this amount, during any 12-month period. Further, the PSI does not contain any facts that support the enhancement under § 2D1.1 (b)(14). ¶ 342 should therefore be ordered stricken from the PSI and no offense level enhancement applied under § 2D1.1 (b) (14).

F. <u>No Increase is warranted for any leadership role where all members of the Native Mob had an equal voice and authority within the group.</u>

Defendant McArthur objects to the recommendation in the PSI that the court impose a four level offense level increase under U.S.S.G. § 3B1.1(a) for McArthur having a role of an organizer or leader. See PSI ¶¶ 285, 321, 328, 335 and 345. Defendant does not dispute that the criminal activity involved five or more participants or was otherwise extensive but does dispute that he was an organizer or leader of such criminal activity.

Application Note 4 to § 3B1.1 sets forth factors that the Court should consider in determining whether an enhancement for role in the offense is warranted. The factors include "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the

36

offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."  U.S.S.G. § 3B1.1, Commentary, Application Note 4.

Defendant recognizes that the Eighth circuit has broadly defined the terms "organizer" and "leader."  *United States v. Williams*, 605 F.3d. 556, 570-71 (8th.Cir.2010).  A defendant's role in the offense, whether the defendant recruited accomplices, the degree that the defendant participated in planning or organizing the offense, and the degree of control and authority that the defendant exercised over others are all relevant factors to consider in determining whether a leadership role enhancement is warranted.  *Id.*

McArthur was the Ogema of the Native Mob on the streets in Minnesota and led the discussion and talk during the circles which the group called "council meetings."  The evidence at trial showed, however, that this title of "Ogema" did not give McArthur any control over any other member of the Native Mob, any claim to any greater share of proceeds-to the extent that there were any proceeds-or otherwise exercise any meaningful control and authority over the other Native Mob members.   While the Native Mob certainly did have discipline, this was imposed largely to keep members from hurting or killing each other or engaging in disrespectful conduct that might lead to this.  The evidence at trial showed that this was surely not an organized and disciplined group with a clear leader.  To the contrary, the degree of indiscipline and uncontrolled individualized behavior of the individual members for their own individual purposes was striking.

No offense level increase is warranted for role in the offense and any paragraphs or statements within the PSI that so conclude should be stricken.

G. Mr. McArthur never obstructed of impeded the administration of justice.

The PSI recommends that McArthur's offense level be increased for obstructing or impeding the administration of justice under U.S.S.G. § 3C1.1. See PSI ¶¶ 279, 280, 322, 329, 336 and 346. This recommendation is based on essentially two claims: that McArthur instructed Gordan Reese to lie in his testimony and that McArthur himself lied in his testimony. Both these allegations are false and should be rejected. McArthur sought that Reese truthfully testify that McArthur and Jeremee Kraskey were close and that Native Mob members in prison believed that Amos LaDuke was behind a defamatory document about Wakinyan McArthur. McArthur also testified truthfully and accurately that the Native Mob on the street does not have any written set of bylaws.

U.S.S.G. §3C1.1 provides for a two level increase in offense level for obstructing or impeding the administration of justice. In order to be subject to such enhancement, the government has the burden of showing that:

> 1) The defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the initial offense of conviction, and
> 2) The obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense…

U.S.S.G. § 3C1.1.

Enhancement for obstructing or impeding the administration of justice is not warranted just because a defendant does or says something that the government factually disputes. Application Note 2 to this Guidelines Section provides the following limitation on its applicability:

This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

U.S.S.G. §3C1.1, Commentary, Application Note 2.

A sentencing court cannot apply the enhancement "simply because a defendant testifies on his behalf" and the jury-or the government-disbelieves him. *United States v. Flores*, 362 F.3d 1030, 1037 (8th.Cir.2004). "Rather, once a defendant objects, the sentencing court must itself conduct an independent evaluation and determine whether the defendant committed perjury." *Id.* A defendant commits perjury only if they give "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Flores*, 362 F.3d at 1038; citing *United States v. Taylor*, 207 F.3d 452, 454-55 (8th.Cir.2000) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 113 S.Ct. 1111 (1993)). Application Note 6 to § 3C1.1 defines "material evidence" as "evidence, fact, statement, or information that, if believed, would tend to influence or effect the issue under determination." U.S.S.G. § 3C1.1, Commentary, Application Note 6.

The evidence at trial does not show that Mr. McArthur ever committed, suborned, or attempted to suborn perjury. As to the "drop letter" that Mr. McArthur sent to Gordon Reese, this was nothing more than an ill-advised and awkward attempt by a man facing

39

life in prison to prepare a witness to come and tell the truth at his trial. The PSI and the government contend that the "false testimony" that McArthur would have Reese put on was that McArthur and Jeremy Kraskey were close and that Amos LaDuke despised Wakinyon McArthur and was involved in an effort to disparage him within the prison system by circulating false paperwork, "black and white," that portrayed Mr. McArthur as a pedophile. The testimony of Mr. Kraskey's daughter, Taneisha Kraskey, confirms that McArthur and Kraskey were close. The defense also introduced evidence showing that McArthur was indeed a pallbearer at Kraskey's funeral.

Further, it was well known for some time within the Native Mob members in prison that Amos LaDuke was believed to have been circulating a false decision reportedly by the Minnesota Court of Appeals regarding Wakinyan McArthur. A copy of the actual decision and the false one are attached hereto as Exhibits 1 and 2 respectively. Reese's testimony that McArthur expected he would give and which was the subject of the drop letter thus would have been truthful. McArthur was not asking Reese to make anything up or say anything that was not true; he simply wanted him to confirm the truth.

Similarly, McArthur's trial testimony that the Native Mob on the street had no written set of bylaws was also true. The PSI and the government grossly distort the significance of an off-hand comment made by Mr. McArthur during a council meeting that the Native Mob on the street has "rules and bylaws." While McArthur certainly said this, the evidence at trial was overwhelming that the only written rules and bylaws from the Native Mob came from within the prison system. Moreover, this statement, even if it is inconsistent with his trial testimony, does not make this fact-whether or not the Native

40

Mob had rules and bylaws-material. Neither the existence of the Native Mob as an organization or Wakinyan McArthur's membership in the Native Mob were ever disputed.

The evidence does not show that Mr. McArthur ever committed, suborned, or attempted to suborn perjury. No enhancement is therefore warranted under U.S.S.G. § 3C1.1. Further, all references to Mr. McArthur allegedly giving false testimony or instructing others to testify falsely should be stricken from the PSI including ¶¶ 279, 280, 322, 329, 336 and 346.

H. The offense level for Count 1 should not be based on any underlying offense the elements of which have not been proven beyond a reasonable doubt.

The PSI recommends that Mr. McArthur's offense level as to Count 1 be based on what it characterizes as three "attempted murders" occurring on August 21, 2010, September 9, 2010, and November 20, 2010. See PSI ¶¶ 317-337. Defendant objects to these paragraphs in their entirety and to all related paragraphs which set forth any alleged facts regarding any of these three incidents. There are two bases for this objection.

First, Mr. McArthur never admitted any facts constituting any elements of attempted murder for any of these incidents. Moreover, there was no finding by the jury that McArthur was in any way guilty of any attempted murder on any of these dates. Sentencing Mr. McArthur for crimes that he never pled guilty to and that the elements were never found by a jury to have been proven beyond a reasonable doubt, violates Mr. McArthur's right to due process under the Fifth Amendment and his right to a jury trial under the Sixth Amendment. See *Alleyne v. United States*, 133 S.Ct. 2151 (2013);

41

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000); *In Re Winship*, 397 U.S. 358 (1970).

Beyond the constitutional requirements, the Sentencing Guidelines also require that to be held responsible for any pseudo count underlying a RICO conspiracy conviction, the Court must find that the defendant's participation in such separate underlying crime has been proven beyond a reasonable doubt. The offense level for the RICO conspiracy count, Count 1, is determined by § 2E1.1 of the Sentencing Guidelines. This section provides that the base offense level is the greater of 19 or "the offense level applicable to the underlying racketeering activity." U.S.S.G. § 2E1.1 (a) (2). § 1B1.2 (d) provides that:

> A conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit.

U.S.S.G. § 1B1.2 (d).

The Commentary to this section provides the following important caution at Application Note 4:

> Particular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy. In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier effect, would convict the defendant of conspiring to commit that object offense.

U.S.S.G. § 1B1.2, Commentary Application Note 4.

Were it sitting as the trier of fact, the Court could only convict the defendant of an offense if all elements of that offense had been proven beyond a reasonable doubt. As

42

the Eleventh Circuit Court of Appeals explained in *United States v. Farese*, 248 F.3d
1056 (11th.Cir.2001); "(w)e have interpreted the words 'were it sitting as a trier of fact'
in this commentary to mean that the district court must find beyond a reasonable doubt
that the defendant conspired to commit a particular object offense before the court can
sentence the defendant on the basis of that offense." *Farese,* 248 F.3d at 1060-1061;
citing *United States v. Ross*, 11 F.3d 970, 990 (11th.Cir.1997); *United States. v.
McKinley*, 995 F.2d 1020, 1026 (11th.Cir.1993).

Here, the government has certainly not proven beyond a reasonable doubt that Mr.
McArthur is guilty of the three claimed attempted murders in pseudo counts 1 through 3.
Thus, they should not form any basis for the Court's sentence and all paragraphs
referencing or concerning these pseudo counts and offenses should be stricken.

In the alternative, the court should use the offense level under the minor assault
sentencing guideline, § 2A2.3, or at most, the aggravated assault guideline, § 2A2.2.
Using these guidelines more accurately reflects these three shootings, two of which
involved shooting at houses and none of which involved any serious bodily harm to
anyone. The difficulty facing the Court in determining the appropriate sentence under the
RICO conspiracy count faced the court in *United States v. Smith*, 2013 WL 1667320
(E.D.MO; April 17, 2013). The sentencing court in that case recognized that "in a
complex RICO conspiracy where the jury was not asked to find that the defendant
committed specific predicate acts, determining the proper 'underlying racketeering
activities' for guidelines purposes is not simple." *Id.* Looking at the actual conduct the
defendant engaged in, the Court in *Smith* determined that the aggravated assault

43

sentencing guideline was most analogous to determine the offense level under § 2E1.1 rather than the offense level applicable to conspiracy to commit murder, attempted murder, or conspiracy to commit arson as argued by the government and recommended by the PSI. *Id.*

If either the aggravated assault or minor assault guideline is used, the base offense level for pseudo Counts 1-3 would be 19. The base offense level under § 2A2.2, the aggravated assault guideline, is 14. Defendant acknowledges that a firearm was discharged in all of the three incidents requiring a 5 level increase in the offense level. § 2A2.2 (b) (2). No other specific offense characteristics apply and thus the total offense level would be 19.

For the minor or civil assault guideline, the base offense level would be 7 under § 2A2.3 (a) (1). However, under § 2E1.1 (a), the offense level becomes 19 as this is the greater offense level.

I. <u>Defendant's proposed guidelines.</u>

In light of the above objections and arguments, defendant contends that the court should find the base offense level is 26 based upon the total amount of drugs that Mr. McArthur should be held responsible for. § 2D1.1 (c) (7). Defendant acknowledges that a two level increase is warranted under § 2D1.1 (b) (2). Defendant contends that no other offense level adjustments are warranted under Chapters 2 or 3 resulting in an adjusted offense level of 28. Given defendant's objections to the use of any pseudo counts the offenses of which have not been proven beyond a reasonable doubt, defendant contends that his sentences on Counts 1, 2, 7 and 8 involve substantially the same harm and should

be grouped under § 3D1.2.  Thus, there is no offense level increase under § 3D1.4 and the total offense level is 28.

Defendant agrees that he is in criminal history category III.  Thus, with an offense level of 28, the advisory range under the Sentencing Guidelines is 97-121 months imprisonment.

III.    *Defendant's Conviction on Count 11 should be vacated as it constitutes double punishment for the same offense, namely using or possessing a firearm in furtherance of a single predicate offense, the conspiracy alleged in Count 1, and therefore violates the Double Jeopardy clause of the Fifth Amendment to the United States Constitution.  In the alternative, because §924(c) is ambiguous as to whether using or possessing more than one firearm in furtherance of a single predicate offense is a "second or subsequent conviction" for violating §924(c)(1), under the rule of lenity, statutory ambiguities must be resolved in favor of the accused and a five year term of imprisonment imposed on both Counts 10 and 11 to run concurrently with each other.*

Mr. McArthur was convicted of two counts of use and carrying of firearm during and relation to a crime of violence, § 924(c)(1); Counts 10 and 11.  While the counts arise out of incidents occurring on different dates; the August 24, 2010 shooting of the residence at 2411 Bemidji Avenue, Bemidji, Minnesota and the March 28, 2011, home invasion of the Willkie residence in Cass Lake Minnesota, respectively; both uses of firearms were in relation to a single crime of violence, namely conspiracy to participate in racketeering activity as set forth in Count 1 of the Superseding Indictment.

45

As to Count 11, the PSI recommends that this be deemed a "second or subsequent" conviction" under § 924(c)(1)(C) subjecting Mr. McArthur to a consecutive 25 year term of imprisonment.  PSI ¶¶ F.2, 358 and 416; see also 18 U.S.C. § 924 (c)(1)(C). Defendant objects to this recommendation on two grounds.

 First, because the unit of prosecution under § 924 (c) is the underlying crime of violence or drug trafficking crime and not the firearms, imposing multiple consecutive sentences under subsection § 924 (c)for using multiple weapons during a single predicate crime violates the Fifth Amendment's Double Jeopardy clause.  McArthur's conviction on Count 11 therefore should be vacated.  Second, and in the alternative, § 924 (c) is ambiguous as to whether, in a case where more than one firearm is used or possessed in the course of a single predicate offense, the § 924 (c) (1) convictions after the first one are "second or subsequent" convictions within the meaning of the statute.  Because of this ambiguity. under the doctrine of lenity, the sentence imposed on multiple § 924 (c)(1) convictions based on a single underlying offense cannot exceed five years.

A decided majority of the Federal Courts of Appeal that have decided cases involving the issue of what is the unit of prosecution under 18 U.S.C. § 924(c)(1), and therefore what makes a conviction a "second or subsequent conviction under this subsection," have concluded that the unit of prosecution is the underlying predicate offense and not the number of firearms used in that offense.  See *United States v. Diaz*, 592 F.3d 467, 471-475 (3rd. Cir. 2010); *United States v. Rodriquez*, 525 F.3d 85, 111 (1st.Cir.2008); *United States v. Baptiste*, 309 F.3d 274, 279 (5th.Cir.2010); *United States v. Lindsay*, 985 F.2d 666, 676 (2nd.Cir.1993); *United States v. Anderson*, 59 F.3d 1323,

1326-27 (DC.Cir.1995); *United States v. Cappas*, 29 F.3d 1187, 1195 (7th.Cir.1994); *United States v. Hamilton*, 953 F.2d 1344, 1346 (11th.Cir.1992); *United States v. Smith*, 924 F.2d 889, 894-95 (9th.Cir.1991); *United States v. Henning*, 906 F.2d 1392, 1399 (10th.Cir.1990).

The decision by the Third Circuit Court of Appeals in *Diaz* explains in detail in a clear and reasonable opinion why the proper unit of prosecution under § 924 (c)(1) is the underlying predicate offense.  After examining the decisions of a number of different Courts of Appeal that have analyzed this issue as well as the legislative history of § 924 (c), the Third Circuit found that the statute itself was ambiguous as to what was the proper unit of prosecution and, therefore, whether the use or possession of a second firearm during the same underlying offense would be a "second or subsequent conviction" triggering the 25 year mandatory consecutive term of imprisonment under § 924 (c)(1)(C).  *Diaz*, 592 F.3d at 475.  Because the statute was ambiguous in this respect, the Third Circuit applied the rule of lenity to find the unit of prosecution was the underlying predicate offense.  *Id.*  As the Court stated, "although it is true that the rule of lenity is reserved for statutes with grievous ambiguity, we can say without hesitation that 'after seizing everything from which aid can be derived' we are 'left with an ambiguous statute.'"  *Diaz*, 592 F.3d at 474-475; citing *Smith v. United States*, 508 U.S. 223, 239-40 113 S.Ct. 2050, 124 L.2d 138 (1993).   In reaching this conclusion, the *Diaz* court also noted "application of the rule of lenity is particularly appropriate in the context of § 924 (c) because of its mandatory consecutive sentences and extremely harsh penalties for

47

subsequent convictions." *Diaz*, 592 F.3d at 475.  The *Diaz* court therefore vacated one of

Diaz's two § 924 (c) convictions and remanded to the District Court for resentencing.  *Id.*

While the vast majority of Courts of Appeal have resolved the issue the same way

as did the Third circuit in *Diaz*, defendant recognizes that the Eighth Circuit has found

that the unit of prosecution under § 924 (c) was the individual "uses" to which firearms

were put in the course of the underlying offense.  *United States v. Lucas*, 932 F.2d 1210,

1222 (8th.Cir.1991).  Given the number of cases that have analyzed § 924 (c) since the

*Lucas* case was decided that have concluded that, at best, the statute is ambiguous as to

what is the unit of prosecution; defendant submits that *Lucas* was wrongly decided.

Defendant understands and recognizes that this is a question that must be addressed by

the Eighth Circuit.

However, even if the District Court follows *Lucas* and finds that the unit of

prosecution under § 924 (c) is the individual "uses" of the firearms, the Court still should

not impose a 25 year consecutive sentence under § 924 (c)(1)(C).  Approximately two

months after the Eighth Circuit's decision in *Lucas*, the Eighth Circuit decided the case of

*United States v. Freisinger*, 937 F.2d 383 (8th.Cir.1991).  *Freisinger* was also a case

involving multiple convictions under § 924 (c) that occurred during a single predicate

offense.  While the *Freisinger* court did not see any violation of the double jeopardy

clause in imposing multiple convictions for separate possessions of firearms during and

in relation to a single predicate offense, the court ultimately determined that concurrent

five year terms of imprisonment should be imposed on the multiple § 924 (c) convictions

arising out of the single predicate crime.  The Court reached this conclusion as it found

that the language of the statute was ambiguous as to what constituted a "second or

subsequent conviction." *Freisinger*, 937 F.2d at 391-392.  Given this ambiguity, the

Court applied the rule of lenity and held that the total sentence for the multiple § 924 (c)

convictions could not exceed five years.  The Court explained its conclusion as follows:

> Although Congress has authorized multiple convictions for the use or
> carrying of more than one firearm during a single crime of violence or drug
> trafficking offense, it has not clearly provided for the imposition of a total
> sentence exceeding five years in such a case.  Therefore, again following
> the doctrine of lenity, we hold that the sentence imposed on multiple § 924
> (c)(1) convictions based on a single underlying offense cannot exceed five
> years.

*Freisinger*, 937 F.2d at 391-392.

The Eighth Circuit went on to explain that, "for the sake of uniformity in the

federal sentencing scheme, we conclude where multiple Section 924 (c)(1) convictions

are based upon the carrying (or use) of more than one firearm during a single underlying

offense, the sentencing court should impose a sentence of five years on each of the

firearms convictions and order them to run concurrently."  *Freisinger*, 937 F.2d at 392.

Here, Mr. McArthur's two § 924 (c)(1) convictions arise out of a single crime of

violence, namely, that charged in Count 1.  The convictions on Counts 10 and 11

certainly involve different dates and incidents.  Nonetheless, as charged in the

Superseding Indictment, they still arise out of the same crime.  The government could

have charged multiple § 924 (c)(1) crimes that arose out of multiple different underlying

crimes of violence or drug trafficking crimes.  However, the Court in imposing sentence

is bound by the counts of conviction and the Superseding Indictment on which they are

based.  In this case there are multiple § 924 (c)(1) convictions based upon the carrying or

use of more than one firearm but during a single underlying offense. Thus, under

*Freisinger*, this Court must impose a five-year term of imprisonment on each of the § 924

(c)(1) convictions but order them to run concurrently. Defendant requests that the Court

do so.

IV.    *Additional sentencing considerations of 18 U.S.C. §3553(a) warrant a downward*

*variance from the guidelines' range.*

     *United States v. Booker,* 534 U.S. 220, 125 S.Ct. 738, 764-66, 160 L.Ed.2d 621

(2005) (Breyer, J.), mandates that sentences be "reasonable" in light of the factors

enunciated in 18 U.S.C. § 3553(a). *United States v. Winters,* 416 F.3d 856, 859 (8th.Cir.

2005). These factors include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed-
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for-
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; …
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As *Booker* made the United States Sentencing Guidelines advisory, the Court has the discretion to apply the sentencing objectives and factors outlined above and impose a sentence not previously authorized under the Guidelines. *United States v. Robinson,* 409 F.3d 979, 981–82 (8th.Cir.2005).

In considering the nature and circumstances of the offense and the history and characteristics of the defendant, the court must- and no doubt certainly will- view Mr. McArthur and his crimes in the context of the environment in which he grew up. The defense will submit to the Court under separate cover a sentencing video including statements by Mr. McArthur's mother, Flora White. Ms. White explains in great detail the hardships that Mr. McArthur had as a child which no doubt impacted the person he became. Mr. McArthur's hardships began before he was even born when his father, thinking that Ms. White had become pregnant by another man, repeatedly beat Ms. White in an effort to get her to abort the child. While Mr. McArthur's father was not successful in preventing him from being born, he did shun him for his entire life.

Mr. McArthur grew up for the most part in or near the Little Earth housing project in South Minneapolis. The Court heard a great deal of testimony about what life is like in the Little Earth housing project. Attached hereto as Exhibit 3 is an internal memorandum prepared by McArthur's defense counsel's office that gives the court further background and information about Little Earth particularly during the time that Mr. McArthur would have been living there. In sum, the Little Earth housing project is an area of Minneapolis racked with poverty and violence, particularly in the late 1980's and early 1990's.

51

McArthur grew up having to survive in this environment without any father figure and with a mother that wasn't there for many many years due to her alcohol abuse. Ms. White discusses this quite candidly in her sentencing video. While she did eventually stop drinking and made significant changes in her life, she did not do so in time to help Mr. McArthur see that the life he was pursuing in terms of running the street and gang banging, would only lead him to where he is today.

Discussing Mr. McArthur's difficulties as a child and the challenges of growing up in the Little Earth housing project without a father is not an excuse for what Mr. McArthur did. He acknowledges the jury found him guilty of serious crimes and he expects to be punished for them. However, it is important in passing sentence to understand who Mr. McArthur is as a person and what factors played a role in his some of the choices he made in his life.

It is also important to account for the reality of what the Native Mob is or was and, particularly in McArthur's case, what he was trying to do as part of that group. No one is arguing for a second that Native Mob members did not commit serious crimes that were devastating to the communities in which they lived for a number of years. However, the evidence at trial did show that the existence of the Native Mob and in particular the council meetings, were successful in achieving cohesion amongst the various Native Mob groups throughout Minnesota and preventing these groups from fighting and killing each other. While the jury did ultimately convict Mr. McArthur of the RICO conspiracy, it does not follow that they rejected out of hand his testimony that he did do some good-or

52

at least seek to do some good- by having Native Mob members resolve disputes between themselves in ways that did not involve them killing each other.

Mr. McArthur has done positive things during the time he has been incarcerated. Defendant is collecting and will later submit some of the certificates of achievement that he has earned by taking many many classes while he has been incarcerated at the Anoka County Jail.

Mr. McArthur has also made great efforts to continue to be a father who plays a positive role in his children's lives despite his incarceration. The Court will have as part of the sentencing video the statement of Amber Powless, the mother of Mr. McArthur's youngest daughter. Ms. Powless will speak to Mr. McArthur's good qualities as a person and also the significant and meaningful efforts he makes to being a good father. Also attached hereto as Exhibits 4 and 5 are letters from people who have known Wakinyan for years and attest to his good qualities. Also attached as Exhibit 6 is confirmation that McArthur did at least start taking college courses.

In passing a sentence on Mr. McArthur, the Court will also certainly consider the need to avoid unwarranted sentence disparities among defendants. Sentencing McArthur to life in prison or anything close to that, as the government will certainly advocate for, will result in a gross and unjust disparity between McArthur's sentence and that of other members of the Native Mob who committed far worse crimes than McArthur did. Three of the most violent members of the Native Mob based upon the testimony at trial, were Ira Goodwin, Damien Beaulieu, and Edwardo Lopez-Villarrubia. The crimes that they committed are much more serious than those committed by Mr. McArthur and involve

53

acts of violence upon acts of violence. These individuals received sentences of 210 months, 151 months, and 140 months respectively. There was no evidence at trial that Mr. McArthur assaulted anyone. He should not receive a greater sentence than those who did.

Further, co-defendant Christopher Wuori received a sentence of 262 months. Even if one holds Mr. McArthur accountable for pseudo counts 1 through 3, the crimes Wuori committed are almost identical to those McArthur was convicted of with the exception that Wuori distributed a whole lot more drugs than the jury found McArthur did.

The following is a recitation of the sentences of the codefendants:

| Defendant | Sentence | Crimes Committed |
| --- | --- | --- |
| Shaun Martinez ¶¶ 223-248 | 516 mos | 3 armed robberies; felony assault; Kraskey homicide; 30 gm cocaine sale; prison assault on LB; placed a "hit" on DB; distribution of 2 lbs of marijuana; distribution of 1 oz of crack; possession by a felon of 9 mm handgun. |
| Dale Pindegayosh ¶¶ 52-55 | Time served | High speed 100-mph chase nearly colliding with oncoming traffic through an area where children were playing,; possession of a loaded .45 cal. magazine; possession of heroin on 4/1/11; sale of crack, cocaine, and marijuana; and possession of a loaded assault rifle. |
| Christopher Wuori ¶¶ 249 – 258 | 262 mos | Provision of firearms; targeting victims; treasurer; planned the assassination of "Sonic;" participated in attempt to kill Sonic; ordered armed burglary of JW's home; crack sales; cocaine trafficking (pounds); aiding attempted homicide; manager or supervisor. |

| | | |
|---|---|---|
| Ira Goodwin<br><br>¶¶ 203 – 207 | 210 mos | Attempted to run woman and her children off a highway and led officers on a 100 mph high speed chase on 3/28/11 in retaliation for her boyfriend informing on NM; stomped WY's head until unconscious and put .357 magnum to AD's head who had come to WY's assistance on 6/25/11; trafficked in cocaine, crack, marijuana, and pills. |
| Damien Beaulieu<br>¶¶ 69 – 85 | 151 mos | Assault w/gun; shooting firearms 3/18/10; shooting into residence 4/10/10; assault by shooting at rival gang on 5/22/10; shooting of residence on 6/5/10; shooting at children in park on 6/30/10; drive-by residential shooting on 8/16/10; residential shooting on 8/19/10; shooting assault on 9/9/10; residential shooting on 9/25/10; assault of CI on 10/9/10; conspiratorial phone calls regarding drug trafficking, firearms trafficking, and firearms attack on African-Americans; shot at rival gang member in summer, 2010; shooting at rival gang members on 11/27/10. |
| Eduardo Lopez-Villarrubia<br>¶¶ 175 - 185 | 140 mos | "Rep" for So Mpls; assaulted gang member's son and girlfriend; on 3/7/10 shot KH in the neck and boasted of it; residential shooting on 4/10/10; conspiratorial violent crimes conversations; admitted assaulting two rival gang members and KH to two persons; assaulted informant GO and hospitalized him; directed NM members to shoot at rival gang members on 11/27/10; possessed w/intent to sell crack; possessed handguns; supervisor or manager of NM |
| Derrick Williams<br>¶¶ 101 – 110 | 118 mos | Rep for Mille Lacs; discussed retaliation assault against NM informant who cooperated against Williams; residential shooting on 4/10/10; shot at rival gang members on 5/22/10; admitted he shot ten times at JD, who was falsely claiming NM membership on 6/20/10; assaulted an informant on 10/9/10; on 12/13/11 possession of 12 ga. shotgun, loaded pistol, .38 cal ammo stolen in recent burglary; trafficked cocaine, cocaine base, and ecstasy; manager or supervisor of NM. |
| Stirling Heaton<br>¶¶ 186 - 193 | 115 mos | Rep for Duluth; expressed approval of pistol whipping informant; encourage drug sales to buy communal guns; sold ecstasy, cocaine, and marijuana; possessed 9mm handgun and methamphetamine; assaulted informant CH; had conspiratorial conversations regarding drug dealing, armed robberies, gang discipline, suspected informers, |

|  |  |  |
|---|---|---|
|  |  | gang hierarchy and improvement, and witness intimidation; occupied a position of leadership and enforcement in NM. |
| Alex Jones ¶¶ 147 - 162 | 112 mos | Engaged in conspiratorial conversations re firearm; admitted severely beating and hospitalizing an informant, GO, on 11/15/09; only refrained from killing GO because Jones's girlfriend was present as a witness; served as Southside "Rep" and later NM "War Chief;" possessed marijuana; present in connection with a gun-pointing incident involving a sawed-off rifle; admitted to chasing and shooting at the residence of a juvenile rival gang member, KF on 9/9/10; committed armed robbery on 9/12/10; committed armed robbery of HK on 9/23/10; possessed several firearms and sold cocaine base; fired 8 shots at a rival gang member on 11/20/10; "always" in possession of firearms; stored firearms at his home;  a manager or supervisor of NM. |
| Jesus Ali ¶¶ 208 - 222 | 109 mos | Sold crack; bragged that NM ran the St. Cloud prison; possession of firearms; encouraged discipline of inmate; discussed discipline of NM members; put a "hit" on "NM" who was had stolen money from a gang member; assaulted a fellow inmate, VD, on 5/20/10; extorted other inmates; possession of pure methamphetamine and marijuana; ordered the assault of another inmate; |
| Lance Hanks ¶¶ 118 – 123 | 108 mos | Residence shooting on 4/10/10; fired handgun at rival gang members on 5/22/10 and admitted attempted murder in connection therewith; threatened to kill police officers on 9/6/10 and convicted of terroristic threats in connection therewith; (he had fled from the scene of a different assault and the officers apprehended him). |
| Cory Oquist ¶¶ 124 – 134 | 108 mos | Shot a rival gang member in the leg on 10/27/09; residence shooting on 8/24/10 to eliminate rival drug dealer and admitted to attempted murder in connection therewith; participant in shooting at rival gang members on 11/27/10; residential burglary of occupied dwelling and assault on 3/28/11; sold cocaine base on 11/22/11; participated in conspiratorial conversations on 11/29/10 re: guns and gang rivals; possessed cocaine base and a scale on 1/24/12; assaulted codefendant Wuori on 4/11/12; sold prescription tablets and cocaine base and possessed firearms in 2010. |

| | | |
|---|---|---|
| Eric Bower<br>¶¶ 170 - 174 | 105 mos | Committed an armed residential burglary of an occupied dwelling and assault on 7/7/10; in charge of NM on White Earth reservation; distributed cocaine base in two to three ounce quantities; possessed 10 gms of cocainebase on 1/24/12. |
| Dale Ballinger<br>¶¶ 194 - 202 | 97 mos | Fired a handgun at children playing in park on 6/30/10; fired a silver handgun at residence on 8/16/10; residential shooting on 30 January 2011; possessed three handguns; admitted to attempted murder. |
| Alden Fairbanks<br>¶¶ 46 -51 | 78mos | Conspiratorial conversations re: drug trafficking and NM business; possession of crack, cocaine, scale, and firearms on 5/19/06; possession of firearm and heroin on 4/4/11; burglary and assault of an occupied dwelling on 3/28/11. |
| Codey Stone<br>¶¶ 111 – 117 | 92 mos | Assaulted a woman with a gun and robbed a man on 10/8/06 and convicted of Aggravated Assault and Aggravated Robbery in connection therewith; possessed crack cocaine; possession of a 9mm Luger on 8/25/10; armed robbery of $2,000 on 9/12/10; sold cocaine base while in possession of a gun in 2010; committed armed robbery with Beaulieu; possessed firearms and secreted them in Wisconsin. |
| Samuel White<br>¶¶ 163 - 169 | 70 mos | Assaulted and hospitalized CH with a handgun on 5/11/10; committed witness intimidation against CH; engaged in conspiratorial conversations regarding NM hierarchy, informants, and meetings with methods to improve the gang; sold an ounce and one-half of cocaine base per week in 2007; purchased pounds of marijuana; provided firearms to others. |
| Aaron Gilbert<br>¶¶ 92 - 100 | 57 mos | Shot at rival gang members on 11/29/03; conspiratorial phone calls re: NM business, informants, and purchase of firearms; assault on informant on 10/9/10; leader of burglary and assault in an occupied dwelling on 3/28/11; high speed chase and possession of heroin on 4/1/11; stored firearms and narcotics in his home; sold heroin, crack, and methamphetamine; rep for South Minneapolis. |
| Jason Poitra<br>¶¶ 60 - 68 | 46 mos | Possessed 50 lbs of marijuana, 12 oz quantities of cocaine; sold cocaine base, cocaine, and marijuana; assaulted a native mob member as discipline. |

| | | |
|---|---|---|
| Kieron Kier<br>¶¶ 135 - 139 | 41 mos | Told members at a meeting he needed firearms; possessed 200 prescription tablets including Percocets; Oxycodone, and Oxycontin on 7/27/10; possessed and distributed cocaine, prescription tablets, including Percocets that he sold. |
| Justen Poitra<br>¶¶ 56 – 59 | 36 mos | Chief Enforcer of NM; sold cocaine base and "pills"; possessed two pistols and shotgun; possessed a .44 magnum handgun in 2011; possessed over a kg of marijuana; manager or supervisor of NM. |
| Shelby<br>Boswell<br>¶¶ 140 - 146 | 35 mos | Shot at and wounded in the leg a rival gang member on 10/27/09; sold cocaine base on 4/9/10; present at gun pointing incident involving a sawed-off rifle on 6/23/10; assaulted and hospitalized JH, JH's father, and JH's girl-friend with a baseball bat and with 10 – 15 other assailants and later admitted he "fucked up three people with a bat." |
| Matthew<br>Poitra<br>¶¶ 86 - 91 | 30 mos | Assaulted and hospitalized NM member and informer GO on 11/15/10; assaulted the son of a woman Villarrubia was assaulting on 4/28/11; transported firearms and possessed firearms; sold cocaine base; on 9/28/11 had conspiratorial phone calls identifying Beaulieu as an informant and discussing other NM business. |

In light of the factors of 18 U.S.C. § 3553 (a), a reasonable sentence in this case, one would that be sufficient but not greater than that necessary to fulfill the purposes of sentencing, would be a total sentence of 180 months. This sentence could be achieved by imposing a sentence of 120 months concurrently on counts 1, 2, 7 and 8 with a consecutive 60 month term of imprisonment on counts 10 and 11.

## CONCLUSION

For the foregoing reasons, Mr. McArthur requests that the Court sentence him to a total term of imprisonment of 180 months.  Defendant also requests that the Court recommend to the BOP that Mr. McArthur be designated to a Federal Correctional Facility in or near Minnesota.

                         Respectfully submitted,

DATED: May 15, 2014

                         GOETZ & ECKLAND P.A.


                   By: ___s/Frederick J. Goetz_____
                         FREDERICK J. GOETZ
                         Attorney Registration No. 185425
                         Exposition Hall at Riverplace
                         43 Main Street S.E., Suite 505
                         Minneapolis, MN 55414
                         (612) 874-1552

                         ATTORNEY FOR DEFENDANT